**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAMB FARMS, INC., LAMB FARMS DAIRY, LLC, HOFFMAN HAPPY HOLSTEINS LLC, PAUL VAN WARMERDAM D/B/A PH RANCH, and CLOVER HILL DAIRY LLC, | ) ) ) ) ) | |
| | ) | No. 25-cv-02160 |
| Plaintiffs, | ) ) | Judge John J. Tharp, Jr. |
| v. | ) ) | |
| GEA FARM TECHNOLOGIES, INC., GEA, NORTH AMERICA, INC., GEA GROUP AG, and GEA FARM TECHNOLOGIES GMBH, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons set forth in the Opinion below, the plaintiffs' motion for leave to serve the German defendants by alternative means [96] is granted. The plaintiffs may serve defendants GEA Group AG and GEA Farm Technologies GmbH by certified mail or private courier at their official business address in Germany, by email to counsel for defendants GEA Farm Technologies, Inc. and GEAA North America, Inc, and by facsimile to the German defendants' publicly listed fax numbers.

## BACKGROUND

This products liability action arises from the plaintiffs' allegations that defendants designed, manufactured and sold defective robotic dairy milking systems. R. 1 ¶ 1-12.[1] This action names four affiliated GEA entities: two domestic defendants that have already been served and two German defendants—GEA Group AG and GEA Farm Technologies GmbH—that have not. R. 96 at 2.

After translating the operative complaint into German, the plaintiffs initiated service on the German defendants pursuant to Federal Rule of Civil Procedure 4(f)(1) and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters art. 10(a), Nov. 15, 1965, 20 U.S.T. 361 ("Hague Convention"). R. 96 at 1-2. The plaintiffs pursued Hague service for approximately eight months. *Id.* Ultimately, however, the German Central

---

[1] Citations to the docket are indicated by "R." followed by the docket number, and, where necessary, a page or paragraph citation.

Authority declined to effect service because of the potential application of Illinois' split-recovery statute governing punitive damages,[2] and requested that the plaintiffs submit a declaration disclaiming claims that could implicate that statute. *Id.* at 4-5; R. 96-5 at 1-2. The plaintiffs declined to submit such a declaration and instead moved for leave to effect service pursuant to Rule 4(f)(3) by certified mail or private courier, email to domestic defendants' counsel, and facsimile. *Id.* at 1.

The domestic defendants, appearing as *amici curiae,* oppose the motion. R. 103. The plaintiffs have filed a reply and supplemental authority. R. 107; R. 109.

## ANALYSIS

Federal Rule of Civil Procedure 4(f) governs service of process on individuals in foreign countries. Rule 4(f)(1) permits service "by any internationally agreed means of service that is reasonably calculated to give notice," including those authorized by the Hague Convention. Rule 4(f)(3), in turn, authorizes service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).

Rule 4(f)(3) is neither "a last resort nor extraordinary relief"; rather, it is simply one of several permissible methods of effecting service abroad. *Smith v. SMS Grp., Inc.*, No. 22-CV-1303-DWD, 2022 WL 15460279 at *1 (S.D. Ill. Oct. 27, 2022); *In re Paraquat Prod. Liab. Litig.*, No. 3:21-MD-3004-NJR, 2021 WL 4775284 at *3 (S.D. Ill. Oct. 13, 2021)). "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Strabala v. Zhang*, 318 F.R.D. 81 (N.D. Ill. 2016) (quoting *Brockmeyer v. May*, 383 F.3d 798, 805 (9th Cir. 2004)); *Hinsey v. Better Built Dry Kilns, Inc.*, No. 1:08-CV-00114, 2009 WL 1766883 at *2 (N.D. Ind. June 22, 2009).

Because Rule 4(f)(3) authorizes service only "as the court orders," a plaintiff seeking alternative service ordinarily must provide a case-specific justification for the Court to exercise its discretion. *NBA Props., Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A",* 549 F. Supp. 3d 790, 797 (N.D. Ill. 2021), aff'd sub nom. *See NBA Props., Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022); *Smith*, 2022 WL 15460279 at *1; *Flava Works, Inc.*, 2013 WL 1751468 at *7; *1025 W. Addison St. Apartments Owner, LLC v. Grupo Cinemex, S.A. de C.V.*, No. 20-CV-06811, 2021 WL 2136073, at *8 (N.D. Ill. May 26, 2021). In addition, the proposed service method must not be prohibited by international agreement and must satisfy constitutional due process. *Strabala*, 318 F.R.D. at 115.

---

[2] See 735 ILCS 5/2-1207. The plaintiffs explain that the German court found this provision problematic because, to the extent that punitive damages might be awarded, it would allow allocation of a portion of those damages to the state of Illinois. Based on that possibility, the court appears to have concluded that this action is potentially a public proceeding and therefore outside of boundaries of the Hague Convention, which applies to matters that are exclusively civil or commercial in nature.

Accordingly, the Court considers whether the plaintiffs have demonstrated (1) that alternative service is warranted, (2) that the proposed methods of service are not prohibited by international agreement, and (3) that the proposed methods of service satisfy due process.

## I.     **The Plaintiffs Have Demonstrated Why Alternative Service Is Warranted.**

The plaintiffs argue that alternative service is warranted because the plaintiffs diligently attempted service under the Hague Convention and those efforts have reached a practical impasse. R. 96 at 1-2. The Court agrees.

The record reflects that, after translating the complaint into German, the plaintiffs retained an international process server and initiated service through the Hague Convention in August 2025. R. 96 at 2-5. The plaintiffs have submitted evidence establishing that the complaint in this action was included in the materials transmitted to the German Central Authority. R. 107 at 2-3; R. 107-1 ¶¶ 5-9. The German authorities ultimately declined to effect service because of the potential application of the Illinois' split-recovery statute governing punitive damages. R. 96 at 4-5. Although the domestic defendants initially argued that the plaintiffs had produced rejection letters only from related litigation, R. 103 at 5-8, the plaintiffs have since supplemented the record with the German authorities' rejection letter specific to this action. R. 109 at 1-2; R. 109-1 at 4.

The domestic defendants nevertheless contend that alternative service is premature because the German authorities merely "presently refrain[ed] from effectuating service" while awaiting plaintiffs' declaration disclaiming claims that could implicate Illinois' split-recovery statute. R. 103 at 10. According to the defendants, the plaintiffs therefore remain able to complete Hague service by submitting the requested declaration and therefore have not yet demonstrated that alternative service is warranted. *Id.*

The Court is not persuaded.

The defendants' position implicates a broader disagreement among courts concerning the relationship between Rules 4(f)(1) and 4(f)(3). Specifically, courts have disagreed over whether a plaintiff must first exhaust service under Rule 4(f)(1)—including service through the Hague Convention—before seeking court-authorized alternative service under Rule 4(f)(3). *Compare Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 986 (N.D. Cal. 2020), with *Peanuts Worldwide LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 347 F.R.D. 316 (N.D. Ill. 2024), appeal dismissed sub nom. *Peanuts Worldwide LLC v. Electrician Guy*, No. 24-2170, 2024 WL 5297821 (7th Cir. Aug. 28, 2024).

The Seventh Circuit has not addressed the contested issue of whether there is a hierarchy or preference for the method of service under Rule 4(f). *See Flava Works, Inc.*, 2013 WL 1751468 at *7. The Court need not resolve the disagreement, however, because the plaintiffs satisfy the requirements of both the majority and minority interpretations.

Under the majority view, Rule 4(f) establishes no hierarchy among its methods of service, and therefore a plaintiff is not required to attempt Hague service under Rule 4(f)(1) before seeking alternative service under Rule 4(f)(3). *See, e.g., Peanuts Worldwide LLC*, 347 F.R.D. at 328; *NBA Props.,* 549 F. Supp. 3d at 796; *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1115 (9th Cir. 2002); *Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161, at *3 (5th Cir. Feb. 14,

2022); *Beijing QIYI Century Sci. & Tech. Co. v. Shenzhen QiYi Innovations Tech. Co.*, No. 18-CV-02360-RM-STV, 2018 WL 6589806 (D. Colo. Dec. 13, 2018); *see also* 4B Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedure § 1134 n.2 (4th ed.). Under this interpretation, the plaintiffs in this case were not required to pursue Hague Convention service before seeking relief under Rule(f)(3)—though they did so nevertheless. *Id.*

The result would not differ under the minority approach, which does require a plaintiff to first pursue Hague Convention service before seeking alternative service.[3] *See, e.g.*, *Carl v. Amazon.com, Inc*., No. 1:22-CV-191-LG-BWR, 2023 WL 1998875, at *5 (S.D. Miss. Feb. 14, 2023); *Strongway Tools, L.L.C v. Ivin,* No. 23-CV-61964, 2023 WL 11991816 (S.D. Fla. Nov. 21, 2023); *Facebook, Inc.,* 480 F. Supp. 3d at 986. The plaintiffs' eight-month effort to pursue Hague service satisfied even this more stringent requirement. *Strabala*, 318 F.R.D. at 114 (service under Rule 4(f)(3) was proper where plaintiff had already attempted service through the Convention without success); *Parsons v. Shenzen Fest Tech. Co.*, No. 18 CV 08506, 2021 WL 767620, at *3 (N.D. Ill. Feb. 26, 2021) (same).

Even under the minority approach, however, the Court cannot conclude that Rule 4(f) required the plaintiffs to continue pursuing Hague Convention service by signing a declaration that narrowed the substantive claims asserted in their complaint. Nothing in the text of Rule 4—or the Advisory Committee Notes upon which the minority view relies—suggests that a plaintiff must alter or abandon substantive claims before seeking court-authorized alternative service. To the contrary, those same Advisory Committee Notes expressly contemplate that alternative service may be appropriate where "the foreign country's Central Authority refuse[es] to serve a complaint seeking punitive damages." Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment; *see also Flava Works, Inc.*, 2013 WL 1751468 at *7. That is precisely the circumstance presented here.

Accordingly, the Court concludes that the plaintiffs have demonstrated why alternative service under Rule 4(f)(3) is warranted. The plaintiffs diligently pursued Hague Convention service for many months. The German Central Authority declined to effect service unless the plaintiffs submitted a declaration disclaiming claims that could implicate Illinois' split-recovery statute. Rule 4(f)(3) does not require plaintiffs to narrow their substantive claims as the price of

---

[3] The minority view is based on the Advisory Committee Notes on Rule 4, which dictate that "[u]se of the [Hague] Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service." *See* Fed. R. Civ. P. 4 advisory committee's note (1993). On this basis, some courts have concluded that where the Convention applies, a plaintiff must first attempt service under its procedures before requesting alternative service. *See, e.g., Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 986 (N.D. Cal. 2020) ("When the Convention applies…service under 4(f)(1) is indeed preferred over service under 4(f)(2) and 4(f)(3). Rule 4(f) may be silent on this preference, but the Convention and the Advisory Committee's notes are not"). Other courts have not found the Advisory Committee notes to be so persuasive. *See, e.g., Beijing QIYI Century Sci. & Tech. Co*., 2018 WL 6589806 ("Nothing in the text of Rule 4(f)(3) or its advisory committee notes, however, suggests such a restrictive view of the availability of alternative service pursuant to Rule 4(f)(3)."); *Peanuts Worldwide LLC*, 347 F.R.D. at 328 (concluding that "there is some ambiguity in the commentary, and, in any event, the comments cannot trump the text of the Rule, which contains no indication of a hierarchy in the text or structure of its three subsections.").

4

obtaining service. Under these circumstances, the plaintiffs have adequately demonstrated that court-authorized service is appropriate.

**II.     The Requested Methods of Service Are Not Prohibited by International Agreement.**

The domestic defendants next argue that the plaintiffs' proposed methods of service are prohibited by international agreement. R. 103 at 11. The domestic defendants point out that Germany objects to Article 10(a) of the Hague Convention which states: "[p]rovided the State of destination does not object, the present Convention shall not interfere with ... the freedom to send judicial documents, by postal channels, directly to persons abroad." R. 103 at 11. The domestic defendants contend that that Germany's objection to this provision bars service by certified mail, and by extension, service by email and facsimile.[4] 20 U.S.T. at 361; R. 103 at 11. The plaintiffs respond that Germany's objection to Article 10 is inapplicable because the German Central Authority itself declined to proceed under the Hague Convention after concluding that this action falls outside the Conventions' scope. R. 107 at n.1.

The Court agrees.

Ordinarily, Germany's objection to Article 10 would present a substantial obstacle to service through postal channels. Indeed, defendants cite several cases holding precisely that. *See Brainlife LLC v. Beekeeper's Nats. Inc.*, No. 3:24-CV-01389-JPG, 2024 WL 3088538, at *4 (S.D. Ill. June 20, 2024) (stating that "because Germany "objects to Article 10(a), service by postal channels is impermissible."); *Agha v. Jacobs*, No. C 07-1800 RS, 2008 WL 2051061, at *1 (N.D. Cal. May 13, 2008) (same).

Those cases, however, share a premise that is absent here: they assume that the Hague Convention governs service. In this case, the German Central Authority declined to effect service because it concluded that the plaintiffs' claims fell outside the Conventions' scope. R. 96-5 at 1-2; R. 109 at 4-5.

Under these unusual circumstances, the Court is not persuaded that Germany's objection to Article 10 precludes relief under Rule 4(f)(3). Courts confronted with materially similar refusals by German authorities have reached the same conclusion. In *Bunk*, the court held that, because the Hague Convention no longer governed service after German authorities refused to proceed, alternative service under Rule 4(f)(3) could be authorized "without regard to the Hague Convention." *U.S. ex rel Bunk v. Birkart Globistics GmbH & Co.*, No. 1:02CV1168 AJT/TRJ,

---

[4] District courts have disagreed on whether Article 10(a)'s reference to "postal channels" encompasses electronic methods such as email or facsimile. *Compare Luxottica Grp. S.p.A. v. P'ships and Unincorporated Ass'ns Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019) (finding that 10(a) objections cover service by email), with *NBA Props.*, 549 F. Supp. 3d at 798 (finding that 10(a) objections don't cover service by email); *see also, Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 177 F.4th 793 (7th Cir. 2026). The Court need not resolve that disagreement because the German Central Authority declined to proceed under the Hague Convention, rendering Germany's Article 10 objection inapplicable under the circumstances presented here.

2010 WL 423247 at *4 (E.D. Va. Feb. 4, 2010). More recently courts addressing Germany's refusal to effect Hague service because of state split-recovery statutes have likewise authorized alternative service by mail, email and service on U.S. counsel. *See, e.g.*, *Varex Imagin Corp. v. Jafari*, No. 2:24-CV-796 DBP, 2025 WL 1282578 at *2 (D. Utah May 2, 2025)*; In re Takata Airbag Prods. Liab. Litig.*, No. 15-02599-MD, 2017 WL 8809362 at *4-6 (S.D. Fla. Mar. 24, 2017), report and recommendation adopted, No. 14-24009-CV, 2017 WL 8809106 (S.D. Fla. Apr. 27, 2017).

Accordingly, because the Hague Convention does not govern service under the circumstances presented here, Germany's objection to Article 10 does not prohibit the alternative methods of service requested by the plaintiffs. The Court therefore concludes that service by certified mail or private courier, email, facsimile and service through U.S. counsel is not prohibited by international agreement within the meaning of Rule 4(f)(3).

### III.     The Requested Methods of Service Satisfy Due Process.

Finally, the Court concludes that the requested methods of service satisfy constitutional due process.

Due process requires only that the method of service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Due process does not require the best possible means of service, nor does it require certainty that notice will be received. *Johnson v. Purdue*, 126 F.4th 562, 566 (7th Cir. 2025). Rather, the question is whether the proposed methods are "reasonably calculated" to provide actual notice. *Id.*; *see also*, *Strabala*, 318 F.R.D. at 115.

The plaintiffs propose serving the German defendants by certified mail or private courier to their official business addresses, by facsimile to their publicly listed fax numbers, and by email to counsel representing the domestic defendants in the litigation. R. 96 at 1. Although defendants do not expressly challenge these methods on due process grounds, they argue that service by email on U.S. counsel is "inappropriate at this juncture" because counsel has not appeared on behalf of the German defendants and lacks authority to accept service for them. R. 103 at 12. Because that objection concerns whether the proposed method of service is reasonably calculated to provide notice, the Court addresses it under the due process requirement of Rule 4(f)(3).

Plaintiffs do not seek to compel domestic counsel to accept service on behalf of the German defendants. R. 96 at 14. Rather, they seek authorization to transmit the summons and complaint to counsel as one means reasonably calculated to notify the German defendants of this action. *Id.* Thus, the relevant inquiry is not whether counsel presently possesses authority to accept service, but whether service through U.S. counsel is reasonably calculated to provide notice. *See United States v. Mrvic*, 652 F. Supp. 3d 409, 414 (S.D.N.Y. 2023).

Under the circumstances presented here, it is. Counsel has represented that it anticipates representing the German defendants once service is accomplished, while maintaining that it presently lacks authority to accept service on their behalf. R. 96 at 3-4. Counsel nevertheless appeared as *amici curiae* and submitted a comprehensive opposition addressing the merits of the plaintiffs' request for alternative service. R. 103. Although the plaintiffs argue that the domestic

6

defendants lack standing to oppose service on behalf of the German defendants, R. 107 at 4-6, the Court need not resolve that issue. Counsel's participation in this litigation demonstrates an existing line of communication with the German defendants sufficient to conclude that transmitting the summons and complaint to counsel by email is reasonably calculated to provide notice.

Moreover, email to U.S. counsel is not the only method of service authorized by this Order. Plaintiffs will also serve the German defendants directly by certified mail or private courier at their official business addresses and by facsimile to their publicly listed fax numbers. Considered together, these complementary methods are more than reasonably calculated to apprise the German defendants of the pendency of this action and afford them an opportunity to respond. Due process requires no more.

Accordingly, the Court concludes that the requested methods of service satisfy constitutional due process.

## **CONCLUSION**

For the foregoing reasons, the plaintiffs' motion for leave to serve the German defendants by alternative means [96] is granted. The plaintiffs may serve defendants GEA Group AG and GEA Farm Technologies GmbH by (1) certified mail or private courier at their official business address in Germany, (2) facsimile to the German defendants' publicly listed fax numbers, and (3) email to counsel for the domestic defendants.

It is so ordered.

Date: July 9, 2026

John J. Tharp, Jr.
United States District Judge

7